UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEACE RANCH LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1 through 20, inclusive,<br><br>        Defendant(s). | No. 2:21-cv-01651-JAM-AC<br><br>ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Before the Court are Peace Ranch LLC's ("Plaintiff") and Rob Bonta's ("Defendant") cross motions for summary judgment. See Pl.'s Mot., ECF No. 69; Def.'s Mot., ECF No. 70. Plaintiff filed its opposition brief, and Defendant filed a reply which was not timely. See Pl.'s Opp'n, ECF No. 77; Minute Order, ECF No. 75. For the following reasons, Defendant's cross-motion is granted and Plaintiff's motion is denied.[1]

///

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for July 1, 2025. The Court did not consider Defendant's late filed reply brief.

1

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The Court need not repeat the factual background set forth extensively in its prior orders. See Orders, ECF Nos. 20 and 33. The pertinent background is as follows: in 2021, the California Legislature enacted Assembly Bill 978 (Cal Stats. 2021, ch. 125) to control rent at mobile home parks. Plaintiff filed suit because its mobile home park, Rancho La Paz, was the only park affected by AB 978. First Amended Complaint ("FAC") ¶ 2, ECF No. 23. In 2022, this Court dismissed with prejudice Plaintiff's suit for lack of standing. See Order, ECF No. 33. The Ninth Circuit reversed, holding that Plaintiff has standing to pursue this action. See Ninth Circuit Mandate, ECF No. 39; see also Peace Ranch, LLC v. Bonta, 93 F.4th 482 (9th Cir. 2024).

Upon remand, the parties now bring cross motions for summary judgment as to the four remaining claims in this action: (1) violation of the prohibition on Bills of Attainder; (2) violation of the Contracts Clause; (3) violation of the Equal Protection Clause; and (4) violation of the Takings Clause. See FAC ¶¶ 41-77; see also Order Dismissing Due Process Claim, ECF No. 42.

II. OPINION

A. Legal Standard

Summary judgment is appropriate when the record, read in the light most favorable to the non-moving party, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute

of fact exists only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

   B.   Requests for Judicial Notice

Under Federal Rule of Evidence 201, a district court may take judicial notice of a fact that is "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  A court may take judicial notice of matters of public record.  Reyn's Pasta Bella LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Plaintiff and Defendant make several requests for judicial notice ("RJN") of matters of public record.  See ECF Nos. 67, 71, and 78.  Because these requests are unopposed, the Court GRANTS these requests.

   C.   Bill of Attainder

The Constitution prohibits any state from passing a bill of attainder.  U.S. Const. art. I, § 10, cl. 1.  A bill of attainder has three elements: "the statute (1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial."  SeaRiver Mar. Fin. Holdings v. Mineta, 309 F.3d 662, 668 (9th Cir. 2002).  AB 978 was passed without a "judicial trial" of Plaintiff.  Moreover,

1  because Defendant already "[admitted] that the law targets
2  Peace Ranch" and the Ninth Circuit found that "the
3  Legislature had Peace Ranch 'in mind' when it enacted AB
4  978," the Court finds that AB 978 specifies Plaintiff.  See
5  Peace Ranch, 93 F.4th at 490.  As such, the determination of
6  this claim hinges on whether AB 978 inflicts punishment.
7       To determine whether a law inflicts punishment, this
8  Court must consider three factors: "(1) whether the
9  challenged statute falls within the historical meaning of
10 legislative punishment; (2) whether the statute, viewed in
11 terms of the type and severity of burdens imposed,
12 reasonably can be said to further nonpunitive legislative
13 purposes; and (3) whether the legislative record evinces a
14 congressional intent to punish."  Selective Serv. Sys. v.
15 Minn. Pub. Interest Research Grp., 468 U.S. 841, 852 (1984)
16 (cleaned up).  Regarding the first factor, the traditional
17 punishments in bills of attainder were "death, imprisonment,
18 banishment, the punitive confiscation of property . . . [or]
19 a bar to . . . specified employments or vocations."
20 SeaRiver, 309 F.3d at 673 (citation omitted).  Defendant
21 correctly contends that rent control is not a traditional
22 punishment for purposes of a bill of attainder.  Def.'s Mot.
23 at 10.  Other courts have similarly decided that rent
24 control laws do not fall within the historical meaning of
25 legislative punishment.  See Valley Investments-Redwood LLC
26 v. City of Alameda, 2023 WL 8039803 at *9 (N.D. Cal. 2023);
27 640 Broadway Renaissance Co. v. Cuomo, 740 F. Supp. 1023,
28 1034-36 (S.D.N.Y. 1990), aff'd sub nom. 640 Broadway v.

Cuomo, 927 F.2d 593 (2d Cir. 1991).

As for the second factor, AB 978 furthers a nonpunitive legislative purpose because it seeks to protect mobile home residents from rent spikes in the face of California's well-documented housing crisis and the economic impact of the COVID-19 pandemic. See A.B. 978, § 1. Plaintiff counters that the law cannot serve a legitimate purpose because it only targets one mobile home park. Pl.'s Opp'n at 16. However, this fact was the same in SeaRiver where the law only targeted the plaintiff's sea vessel, and the Ninth Circuit nonetheless held that the law furthered a nonpunitive purpose. See 309 F.3d at 667, 674-75. Though the law in SeaRiver only applied to the plaintiff's vessel, the Ninth Circuit was persuaded by the fact that the law addressed prospective risks to the environment. Id. Similarly, though Plaintiff is the only mobile home park to which AB 978 currently applies, the law addresses the prospective risk of other mobile home residents by applying to any future entities that meet the criteria outlined in the law. See Cal. Civ. Code § 798.30.5.

Moreover, the type and severity of the burden imposed on Plaintiff matches rent control policies that have been imposed on other types of rental housing. As Defendant observes, AB 978 merely took existing rent control policy and applied it to mobile home parks. Def.'s Mot. at 12-13 (citing Cal. Civ. Code § 1947.12(a)). Plaintiff complains that the mobile home park regulation restricts a rental rate increase to the lesser of (a) 5 percent or (b) 3 percent

1   plus the percentage change in the cost of living, whereas
2   the regulation for other dwellings is the lesser of (a) 10
3   percent or (b) 5 percent plus the percentage change in the
4   cost of living.  Pl.'s Opp'n at 12.  The Court finds this
5   argument unpersuasive, as AB 978's burden is substantially
6   similar to regulations that existed at the time AB 978 was
7   passed.  As Defendant points out, the rates are similar to
8   those in other localities, and the Legislature is currently
9   considering a bill that would lower the rental rate increase
10  statewide to the lesser of (a) 5 percent or (b) 2 percent
11  plus the percentage change in the cost of living.  See
12  Def.'s Mot. at 13-14 (citing Cal. Assembly Bill 1157 (2025-
13  2026 Reg. Sess.)).  As such, the second inquiry does not
14  support a finding of inflicting punishment.
15       Finally, the third factor mandates "unmistakable
16  evidence of punitive intent," which requires more than
17  having an entity in mind when crafting a law.  Selective
18  Serv. Sys., 468 U.S. at 855 n.15 (citation omitted).  While
19  the legislative record refers to Plaintiff throughout, it
20  falls short of demonstrating "any intention of determining
21  [Plaintiff's] blameworthiness or imposing punitive
22  sanctions."  See Nixon v. Adm'r of Gen. Servs., 433 U.S.
23  425, 480 (1977).  Because the bill itself does not name
24  Plaintiff and it could in the future apply to other mobile
25  home parks, the legislature is not "encroaching on the
26  judicial function of punishing an individual for blameworthy
27  offenses."  See id. at 479.  Moreover, while AB 978 applies
28  to only Plaintiff as of now, the Supreme Court held that "a

6

1  legislature may implement its program step by step, adopting
2  regulations that only partially ameliorate a perceived evil
3  and deferring complete elimination of the evil to future
4  regulations."  <u>Minnesota v. Clover Leaf Creamery Co.</u>, 449
5  U.S. 456, 466 (1981) (cleaned up).  As such, the third
6  factor also does not support a finding of inflicting
7  punishment.
8     Accordingly, the Court holds that AB 978 does not
9  inflict punishment, and thus Defendant is entitled to
10 summary judgment as to the Bill of Attainder claim.
11     D.   <u>Equal Protection</u>
12    The Equal Protection Clause of the Fourteenth Amendment
13 prevents any state from "[denying] to any person within its
14 jurisdiction the equal protection of the laws."  U.S. Const.
15 amend. XIV.  Because "AB 978 involves a non-suspect
16 classification," the parties agree that the proper standard
17 of review is rational basis.  <u>See</u> Def.'s Mot. at 23; Pl.'s
18 Mot. at 21.  To survive rational basis review, a
19 classification must be "rationally related to a legitimate
20 state interest."  <u>City of Cleburne, Tex. v. Cleburne Living
21 Center</u>, 473 U.S. 432, 440 (1985).  A legitimate state
22 interest can be "any reasonably conceivable state of facts
23 that could provide a rational basis for the classification,"
24 and this conceivable state of facts does not have to match
25 the legislature's actual interest in passing a law.  <u>F.C.C.
26 v. Beach Commc'ns., Inc.</u>, 508 U.S. 307, 313 (1993).
27    AB 978's classification is "qualified mobilehome parks
28 . . . in counties with populations between 2,500,000 and

3,250,000 according to the last census count." A.B. 978, § 1(i). "Qualified mobilehome parks" are defined as those "located within and governed by the jurisdictions of two or more incorporated cities." Cal. Civ. Code § 798.30.5(h)(4). Because rational basis review only requires that there be a conceivable legitimate interest, it does not necessitate an analysis of the Legislature's actual intent when it passed AB 978. See Beach Commc'ns., 508 U.S. at 313. Defendant asserts that the law has a legitimate government purpose of "protecting people who live in mobilehomes from escalating housing costs and otherwise extending existing rental control protections to mobilehome owners in California." Def.'s Mot. at 24. This interest is legitimate, as mobile home owners are particularly vulnerable to untenable rent increases because their median household income is less than that of conventional renters and less than half of that of conventional homeowners. Sullivan Decl. at 20, ECF No. 70-3. While renters own their home, it is prohibitively expensive to relocate the home to another mobile home park. Sullivan Decl. at 18, ECF No. 70-3. As such, mobile home owners facing stark rent increases are often forced to sell their homes for a fraction of their appraised value or abandon them to park owners. Id. It is also rational that the Legislature was particularly concerned about mobile home parks that are subject to two or more jurisdictions because it is more difficult for tenants in these parks to obtain local relief. See Cal. Civ. Code § 798.30.5(h)(4). As such, the Court finds that Defendant's stated goal of

8

protecting mobile homeowners from rent spikes is a legitimate state interest.

"Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." Ferguson v. Skrupa, 372 U.S. 726, 729 (1963). The Supreme Court and the Ninth Circuit have "upheld rent control laws as rationally related to a legitimate public purpose." Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo, 548 F.3d 1184, 1194 (9th Cir. 2008) (citing Pennell v. City of San Jose, 485 U.S. 1, 13 (1988)). The Supreme Court also held that it is constitutional for legislatures to address societal problems incrementally or partially even if certain groups are disproportionately affected. See e.g., Williamson v. Lee Optical Co., 348 U.S. 483, 489 (1955); City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976). Moreover, any step taken by a legislature need not be the most correct step towards solving the problem; a legislature need only show that the facts it relied upon could be reasonably conceived to be true. Beach Commc'ns., 508 U.S. at 313; Clover Leaf Creamery Co., 449 U.S. at 464.

Accordingly, because AB 978 is rationally related to a legitimate government interest, the Court holds that Defendant is entitled to summary judgment as to the Equal Protection claim.

   E.   Contracts Clause

The Contracts Clause of the U.S. Constitution prohibits a state from passing "any . . . Law impairing the obligation

of Contracts." U.S. Const. art. I, § 10, cl. 1. To determine if a law violates the Contracts Clause, this Court must apply the Supreme Court two-part test:

> The threshold issue is whether the state law has operated as a substantial impairment of a contractual relationship. . . . If such factors show a substantial impairment, the inquiry turns to the means and ends of the legislation. In particular, the Court has asked whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose.

Sveen v. Melin, 584 U.S. 811, 819 (2018) (cleaned up).

The Court assumes arguendo that the law substantially impairs the contractual relationship between Plaintiff and its residents. However, the Court holds that because AB 978 is "drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose," Plaintiff's claim fails as a matter of law. See id. As explained in the Court's Equal Protection analysis, see supra Part D, AB 978 advances a legitimate government interest. Plaintiff argues that the Court cannot reach this conclusion given the Supreme Court's decision in Allied Structural Steel Company v. Spannaus, 438 U.S. 234 (1978). Pl.'s Mot. at 20. As Defendant points out, Allied Structural differed from the case at hand because rent control is foreseeable and the Minnesota Legislature did not even purport to deal with a "broad, generalized economic or social problem." See 438 U.S. at 250; Def.'s Mot. at 21-22. Plaintiff contends that the Minnesota law that was struck down in Allied Structural is indistinguishable from AB 978 in that both laws do not "protect a broad societal interest" but rather only serve a

10

"narrow class." See 438 U.S. at 249; Pl.'s Opp'n at 19. The Court disagrees. Plaintiff appears to have misread pertinent caselaw in arguing that this Court is required to find that AB 978 has a "broad" effect. Instead, this Court must find, as it has, that AB 978 serves a "broad societal interest." See id.

Relying on its expert's testimony, Plaintiff argues that AB 978 could have been better crafted to address the Legislature's interest in protecting residents in mobile homes.  Pl.'s Mot. at 20.  But it would be improper for the Court to second guess the Legislature and how it decided to address this issue. See e.g., Guggenheim v. City of Goleta, 638 F.3d 1111, 1123 (9th Cir. 2010) ("Whether the City of Goleta's economic theory for rent control is sound or not, and whether rent control will serve the purposes stated in the ordinance of protecting tenants from housing shortages and abusively high rents or will undermine those purposes, is not for us to decide."); Schnuck v. City of Santa Monica, 935 F.2d 171, 175 (9th Cir. 1991) ("That rent control may unduly disadvantage others, or that it may exert adverse long-term effects on the housing market, are matters for political argument and resolution; they do not affect the constitutionality of the Rent Control Law."); Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1024 (9th Cir. 2007) ("As in Schnuck, we decline to second-guess Santa Monica's chosen means of implementing its indisputably legitimate goals.")

Accordingly, the Court holds that Defendant is entitled

11

to summary judgment as to the Contracts Clause claim.

F.  Taking

The Takings Clause prohibits unlawful takings. U.S. Const. amends. U.S. Const. amends. V & XIV. Plaintiff advances three theories of violation: (1) per se taking; (2) Penn Central taking; and (3) violation of the Public Use Clause of the Takings Clause. Pl.'s Opp'n at 22-25.

First, pursuant to binding Supreme Court precedent, the Court holds that AB 978 is not a per se taking because "statutes regulating the economic relations of landlords and tenants are not per se takings." See F.C.C. v. Fla. Power Corp., 480 U.S. 245, 252 (1987) (citation omitted); see also Yee v. Escondido, 503 U.S. 519, 531 (1992). Plaintiff asks the Court to ignore controlling caselaw because of a later Supreme Court case that did not concern rent control. Pl.'s Opp'n at 22-23 (citing Koontz v. St Johns River Water Mngmt. Dist., 570 U.S. 595 (2013)). Because Fla. Power Corp. and Yee are still good law that bind lower courts, the Court declines Plaintiff's request and holds that AB 978 is not a per se taking.

Second, a court can find that a taking took place under Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978), after considering: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Murr v. Wisconsin, 582 U.S. 383, 393 (2017).

Regarding the first factor, "Supreme Court precedent

12

has long established that mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." MHC Fin. Ltd. P'ship v. City of San Rafael, 714 F.3d 1118, 1127 (9th Cir. 2013) (citation omitted). Indeed, the Ninth Circuit held that an 81 percent diminution in value was not a sufficient economic impact to constitute a Penn Central taking. Id. Here, Plaintiff has not shown that it has suffered an economic impact beyond diminution in property value, and therefore the first factor does not support a finding of a taking.

Regarding the second factor, Plaintiff argues that it could not have reasonably expected the Legislature to pass rent control laws targeting mobile homes. Pl.'s Mot. at 23. However, the Ninth Circuit squarely rejected this argument when it held:

> Simply put, when buying a piece of property, one cannot reasonably expect that property to be free of government regulation such as zoning, tax assessments, or, as here, rent control. Rancho's argument is tantamount to saying that a homeowner can reasonably expect that the tax assessment or rate of taxation on her home will not increase from the time of purchase. Just as those who do business in a regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end, those who buy into a regulated field such as the mobile home park industry cannot object when regulation is later imposed.

Rancho de Calistoga v. City of Calistoga, 800 F.3d 1083, 1091 (9th Cir. 2015) (cleaned up). Thus, the second factor does not support a finding of a taking.

The third factor also does not support such a finding because the character of the government action here "arises

from some public program adjusting the benefits and burdens of economic life to promote the common good." See Penn Central, 438 U.S. at 124; supra Part D.  Accordingly, AB 978 is not a Penn Central taking.

Finally, Plaintiff argues that AB 978 violates the Public Use Clause of the Takings Clause because the taking is not for public use.  Pl.'s Mot. at 23.  "[T]he Supreme Court has declared that a taking should be upheld as consistent with the Public Use Clause as long as it is rationally related to a conceivable public purpose.  This deferential standard of review echoes the rational-basis test used to review economic regulation under the Due Process and Equal Protection Clauses." MHC Fin. Ltd., 714 F.3d at 1129 (citation omitted).  Because the Court has already found that AB 978 is rationally related to a legitimate government interest, see supra Part D, the Court holds that AB 978 does not violate the Public Use Clause.

Accordingly, Defendant is entitled to summary judgment as to the Takings Clause claim.

### III. ORDER

For the reasons set forth above, Defendant's cross-motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:  July 25, 2025

_____
JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE

14